IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

RUSSELL CARRINGTON,

   *Plaintiff*

   v.

JALESSA DORSEY

   *Defendant*.

Civil Action No. ELH-19-3587
(Related Criminal Case: ELH-13-0151)

**MEMORANDUM**

On December 18, 2019, Russell Carrington, who was then a self-represented federal prisoner, filed suit under 42 U.S.C. § 1983 against "Baltimore City Department of Corrections"; the Maryland Department of Public Safety and Correctional Services ("DPSCS"); Jalessa Dorsey; and Wendell France. ECF 1. The suit is rooted in Carrington's pretrial detention at the Baltimore City Detention Center in 2012 and 2013. According to plaintiff, in 2012 and 2013, while he was detained, he was sexually assaulted by Dorsey, a female correctional officer.[1] Carrington seeks compensatory damages. *Id.* at 7.

Dorsey is the only remaining defendant in this case. She was served with the suit but never responded. Therefore, as discussed, *infra*, I entered a default judgment against Dorsey.

The Court appointed pro bono counsel to assist Carrington with respect to his claim for damages. And on June 26, 2023, I held an evidentiary hearing with respect to damages. Carrington was the sole witness. He appeared via Zoom from the United States Penitentiary-Canaan in Pennsylvania. His lawyer appeared in the courtroom.

For the reasons that follow, I shall award Carrington compensatory damages of $5,000.

---

[1] It is not clear whether Carrington was a federal detainee during the entire time in issue.

## I.   Factual and Procedural Background

### A.  The Criminal Case

Carrington was one of 44 defendants charged in a federal criminal case. *See* ELH-13-0151. In particular, he was indicted in 2013 and charged with Racketeering Conspiracy under the Racketeering Influenced Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 *et seq.*, and with conspiracy to distribute and possess with intent to distribute controlled dangerous substances. ECF 418 (Superseding Indictment); ECF 869 (Second Superseding Indictment).

The criminal charges arose from a pervasive criminal enterprise at the Baltimore City Detention Center ("BCDC"), a State of Maryland facility for pretrial detainees, and involved the smuggling of contraband, including controlled substances, tobacco, and cell phones. The defendants generally consisted of two groups: members of the Black Guerilla Family ("BGF"), who were inmates at BCDC, and corrupt correctional officers who worked at BCDC and helped to facilitate the criminal enterprise. The government claimed that Carrington was a "high-ranking member of BGF . . . ." ECF 2119 at 2.

Dorsey worked as a correctional officer at BCDC. However, she was not named as a defendant in the criminal case.

Most of the 44 defendants pleaded guilty. But, Carrington and seven others proceeded to a lengthy jury trial, at which U.S. District Judge J. Frederick Motz presided. The trial began on November 17, 2014, and it concluded on February 5, 2015, when the jury returned a verdict of guilty as to Carrington and four other defendants. ECF 1425; ECF 1426. Two of the five convicted defendants were BGF gang members who had been inmates at BCDC and three were correctional officers who worked at BCDC. In particular, Carrington was convicted of racketeering conspiracy

(Count One) and conspiracy to distribute drugs (Count Two), *i.e.*, oxycodone, buprenorphine, marijuana, and alprazolam. *Id.*

At Carrington's sentencing on March 27, 2015 (ECF 1584) Judge Motz imposed a below Guidelines total sentence of 210 months (18 years) of imprisonment. ECF 1608 (Judgment, docketed April 8, 2015); ECF 1609 (Statement of Reasons). Carrington noted an appeal. ECF 1586. The Fourth Circuit affirmed defendant's convictions and sentence in an opinion issued on July 25, 2017. ECF 1992; *see United States v. Carrington*, 700 Fed. App'x 224 (4th Cir. 2017). The mandate issued on September 5, 2017. ECF 1999.

On June 25, 2018, Carrington filed a motion under 28 U.S.C. § 2255, advancing a variety of arguments. ECF 2112. By Memorandum Opinion (ECF 2148) and Order (ECF 2149) of February 13, 2019, I denied the motion. I also denied a Certificate of Appealability. *Id.* at 23-24.

Carrington again noted an appeal. ECF 2150. The Fourth Circuit denied a Certificate of Appealability and dismissed the appeal. ECF 2158; ECF 2161.

Then, on December 10, 2021, Carrington filed a "Petition for Relief From Judgment of a Career Offender Under F.R. Civ. Pro. Rule 60(a) and (b)(1)-(4)." ECF 2219. I denied that petition by Memorandum and Order of March 25, 2022. ECF 2226, ECF 2227.

### B. The Civil Case

As noted, Carrington filed his § 1983 civil rights suit on December 18, 2019. ECF 1. Carrington alleges that between January 2012 and February 2013, while he was housed at the BCDC, his constitutional rights were violated when defendant Dorsey, then a BCDC Correctional Officer, sexually assaulted him in his cell. *Id.* at 3-4. Plaintiff claims that he was sexually assaulted by Dorsey between January 2012 and February 15, 2013. *Id.* at 4, ¶ 7.

The suit, which utilizes a § 1983 form, contains two claims. In Claim I, Carrington

alleges an "Eighth Amendment violation" based on the failure of "correctional officials" to protect him from sexual assault and humiliation inflicted by Dorsey. ECF 1 at 3-4. In Count II, Carrington alleges an equal protection violation under the Fourteenth Amendment, asserting a failure to protect by "State correctional officials." *Id.* at 5.

According to plaintiff, in March 2012 Dorsey entered plaintiff's cell and initiated a conversation with him. *Id.* at 4, ¶ 3. She "compliment[ed] plaintiff about his body, saying that she would love to have a man in her life." Then, Dorsey "told" plaintiff to "let her see what he was working, saying that if his penis is big and good looking like his physique, she wanted some." *Id.* ¶ 4. Dorsey laughed at first, thinking Dorsey "was joking." *Id.* ¶ 5. But, she then allegedly "approached" plaintiff, "got on her knees," and performed "oral sex" on plaintiff. *Id.* According to plaintiff, Dorsey then "stood up and pulled her pants down and gave [plaintiff] a direct order to shut the fuck up and instructed [plaintiff] to have sex with her." *Id.* ¶ 6.

Plaintiff appended exhibits to his suit. One is a portion of the trial transcript from his federal criminal case, ELH-13-0151, at which Dorsey testified as a government witness. *See* ECF 1-2.[2] In particular, he included an excerpt of Ms. Dorsey's testimony on December 16, 2014. ECF 1-2. She admitted that she had "a personal relationship" with Carrington while she worked as a correctional officer at BCDC. *Id.* at 4. Moreover, she stated that she had sex with Mr. Carrington approximately two times while he was detained at BCDC. *Id.* However, there was no indication in her testimony, either on direct or on cross-examination, that the sex was non-consensual.

In addition, plaintiff included with his suit correspondence from 2017 and 2018

---

[2] Under Rule 201 of the Federal Rules of Evidence, the Court may take judicial notice of matters of public record, such as the court proceedings. *See*, *e.g.*, *Katyle v. Penn Nat'l Gaming, Inc.*, 637 F.3d 462, 466 (4th Cir. 2011), *cert. denied*, 565 U.S. 825 (2011).

concerning his attempt to file an inmate grievance as to the conduct of Ms. Dorsey. ECF 1-2 at 5-7. However, by letter of January 25, 2018, he was advised by the Inmate Grievance Office for DPSCS that his grievance was untimely, pursuant to Maryland Code, § 10-206(a) of the Correctional Services Article, as well as Code of Maryland Regulations 12.07.01.05(A). *Id.* at 6-7.

Defendants DPSCS, the Maryland Division of Correction ("DOC"),[3] and the BCDC (collectively, the "Institutional Defendants") moved to dismiss Carrington's suit or, in the alternative, for summary judgment. ECF 8; ECF 8-1. The Institutional Defendants raised several legal issues, including that the suit was untimely and thus barred by the Maryland statute of limitations. *See* Maryland Code, § 5-101 of the Courts and Judicial Proceedings Article ("C.J.").

By Memorandum (ECF 12) and Order (ECF 13) of December 14, 2020, I granted the motion of the Institutional Defendants. I noted that defendants pointed out that "[t]here is no 'Baltimore City Department of Corrections.'" ECF 8-1 at 1 n.1. I concluded, *inter alia*, that BCDC is not a cognizable defendant under § 1983. ECF 12 at 7-8. I also determined that DPSCS and the DOC are arms of the State. *See* Md. Code, §§ 2-101, 3-201 of the Correctional Services Article; *Clarke v. Maryland Dep't of Pub. Safety and Corr. Servs.*, 316 Fed. App'x 279, 282 (4th Cir. 2009); ECF 12 at 9-10. Therefore, dismissal as to them on grounds of sovereign immunity was appropriate. *Id.*

Of relevance here, I noted that, in view of the resolution of the case on other grounds, it

---

[3] Defendants explained that there is no entity known as the "Baltimore City Department of Corrections." ECF 8-1 at 1 n.1. Therefore, DOC joined the suit.

was not necessary for me to reach the affirmative defense of limitations. *See* ECF 12 at 10 n.4.[4] That said, it was apparent, on the face of the Complaint, that plaintiff knew of Dorsey's conduct when it first occurred, and by his account that was in 2012. Therefore, Carrington's § 1983 claims, filed in December 2019, were plainly barred by limitations. C.J. § 5-101.

At the time of the motion, service had not been effected on the individual defendants, Jalessa Dorsey and Wendell France. Therefore, in light of plaintiff's status as a self-represented, incarcerated litigant, I directed the Maryland Attorney General's Office to provide the last known home or business address of Dorsey and France, solely for purposes of effecting service of process on the individual defendants or, in the alternative, to provide a statement regarding why their addresses were not available.

Plaintiff moved for default judgment on March 12, 2021 (ECF 21) and for summary judgment. ECF 22. I denied those motions on March 26, 2021. ECF 24. Moreover, I dismissed the suit as to France for failure to serve, and because the Complaint contained no claims as to wrongdoing by him. *Id.* However, I granted the request of Carrington (ECF 18) for appointment of counsel, for the limited purpose of assisting him in obtaining service of process on Dorsey. *Id.* at 2.

Dorsey was personally served on April 22, 2021. ECF 30; ECF 31. Therefore, her response to the suit was due by May 13, 2021. *Id.* And, once service was effected on her, I permitted pro bono counsel to withdraw from the case. ECF 32; ECF 33.

Dorsey did not respond to the suit. Therefore, she obviously did not present a limitations defense.

---

[4] I left unsaid that I anticipated that Dorsey would raise the defense of limitations. That never happened, however, because Dorsey did not respond to the suit.

On June 10, 2021, I issued an "Order To Show Cause" to Dorsey (ECF 35), granting her twenty-eight days to show cause why an order of default should not be entered against her under Fed. R. Civ. P. 55(a). I also directed the Clerk to send a copy of ECF 35 to Dorsey at her service address. *Id.* at 2.

On August 11, 2021, I asked plaintiff to submit a memorandum to address his injuries. ECF 39. And, I stated that Dorsey could respond. *Id.* Again, the Clerk was directed to provide notice to Dorsey at her service address. ECF 39 at 2. Mr. Carrington complied. *See* ECF 40. But, once again, Dorsey never responded. *See* Docket.

In an Amended Order of November 10, 2021 (ECF 42), I entered a default judgment against Dorsey under Rule 55(a). But, I gave Dorsey another twenty-one days to respond to plaintiff's submission concerning his injuries (ECF 40). ECF 42 at 2. Still, Dorsey never responded. *See* Docket.

By Order of January 25, 2022, new pro bono counsel was appointed to assist plaintiff with the presentation of his claim for damages. ECF 45. Thereafter, the Court made several attempts to conduct an evidentiary hearing. *See*, *e.g.*, ECF 54, ECF 57, ECF 61, ECF 62, ECF 67. The hearing was eventually held on June 26, 2023. ECF 68. As noted, Carrington appeared from prison, via video, while his attorney appeared in person, in the courtroom.[5] Carrington was the sole witness.[6]

Carrington testified that, while detained, one learns to do what he is told to do. Moreover, he claims that Ms. Dorsey lied when she testified at the federal criminal trial that she only had

---

[5] The Court thanks pro bono counsel for his efforts in this case.

[6] The Court does not have a transcript from the evidentiary hearing. Therefore, I rely on my notes. Where I use quotes, I do not represent that they are entirely accurate.

sex with Carrington on about two occasions. He estimated that Ms. Dorsey sought "sexual favors" from him about ten times.

In response to the Court's inquiry about the untimely filing of the suit, Carrington claimed that in 2015 he asked his lawyer to file suit as to Ms. Dorsey's actions. It appears that he was referring to his criminal defense attorney. The attorney allegedly told Carrington that it was a civil matter, and that pursuing it would "damage" Carrington's appeal.[7] And, Carrington also explained his delay in filing suit by stating that he had "to focus on his § 2255." *See* ELH-13-151, ECF 2112; ECF 2148; ECF 2149; ECF 2226.

According to Carrington, the sex that he had with Dorsey was not consensual. Moreover, he claims that his three children are angry at him because they believe that he "disrespected their mother," who was his fiancée. Moreover, plaintiff alleges that the incidents have affected his sleep and his appetite, and he worries about "STD's." In addition, he does not "trust the system." In sum, Carrington claims he was "violated" by Dorsey.

In closing, Carrington's attorney said plaintiff was "trapped" and it was "not an insignificant event." He requested the award of damages in the sum of $100,000.[8]

## II.   Discussion

### A.

Plaintiff's claims are lodged pursuant to 42 U.S.C. § 1983. Under § 1983, a plaintiff may file suit against any person who, acting under the color of state law, "subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the

---

[7] Carrington offered no exhibits to support the assertion.

[8] The Court was not provided with any legal authority addressing a prisoner's rights under the circumstances attendant here.

deprivation of any rights, privileges, or immunities secured by the Constitution and laws" of the United States.  *See, e.g.*, *Nieves v. Bartlett*, ___ U.S. ___, 139 S. Ct. 1715, 1721 (2019); *Filarsky v. Delia*, 566 U.S. 377 (2012); *see also Owens v. Balt. City State's Attorney's Office*, 767 F.3d 379 (4th Cir. 2014), *cert. denied sub nom. Balt. City Police Dep't v. Owens*, 575 U.S. 983 (2015).  In other words, § 1983 allows "a party who has been deprived of a federal right under the color of state law to seek relief."  *City of Monterey v. Del Monte Dunes at Monterey, Ltd.*, 526 U.S. 687, 707 (1999).  However, § 1983 "'is not itself a source of substantive rights,' but provides 'a method for vindicating federal rights elsewhere conferred.'"  *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)); *see Safar v. Tingle*, 859 F.3d 241, 245 (4th Cir. 2017).

To state a claim under § 1983, a plaintiff must allege: (1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the alleged violation was committed by a "person acting under the color of state law."  *West v. Atkins*, 487 U.S. 42, 48, (1988); *see Davison v. Randall*, 912 F.3d 666, 679 (4th Cir. 2019); *Crosby v. City of Gastonia*, 635 F.3d 634, 639 (4th Cir. 2011), *cert. denied*, 565 U.S. 823 (2011); *Wahi v. Charleston Area Med. Ctr., Inc.*, 562 F.3d 599, 615 (4th Cir. 2009); *Jenkins v. Medford*, 119 F.3d 1156, 1159–60 (4th Cir. 1997).  "The first step in any such claim is to pinpoint the specific right that has been infringed."  *Safar*, 859 F.3d at 245.

The phrase "under color of state law" is an element that "'is synonymous with the more familiar state-action requirement' for Fourteenth Amendment claims, 'and the analysis for each is identical.'"  *Davison*, 912 F.3d at 679 (quoting *Philips v. Pitt County Memorial Hosp., et al.*, 572 F.3d 176, 180 (4th Cir. 2009)); *see also Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 929 (1982).  A person acts under color of state law "only when exercising power 'possessed by virtue

of state law and made possible only because the wrongdoer is clothed with the authority of state law.'" *Polk Cnty. v. Dodson*, 454 U.S. 312, 317–18 (1981) (quoting *United States v. Classic*, 313 U.S. 299, 326, (1941)); *see also Philips*, 572 F.3d at 181 (citations and internal quotation marks omitted) ("[P]rivate activity will generally not be deemed state action unless the state has so dominated such activity as to convert it to state action: Mere approval of or acquiescence in the initiatives of a private party is insufficient.").

**B.**

Carrington asserts claims under the Eighth Amendment and the Fourteenth Amendment to the Cosntitution. ECF 1 at 3, 5. Given plaintiff's pretrial status at the time of the events in issue, I shall construe the claims under the Fourteenth Amendment. *See Younger v. Crowder*, ___ F.4th ___, 2023 WL 5438173, at *6 n.11 (4th Cir. Aug. 24, 2023); *Mays v. Sprinkle*, 992 F.3d 295, 300 (4th Cir. 2021). However, I "look to Eighth Amendment precedent for guidance, as a pretrial detainee has at least as much protections as a convicted prisoner." *Younger*, 2023 WL 5438173, at *6 n.11. Moreover, given the posture of the case, I accept as true plaintiff's contention that he was subjected to unwanted sex with Dorsey.

The Eighth Amendment prohibits "unnecessary and wanton infliction of pain" by virtue of its guarantee against cruel and unusual punishment. *Gregg v. Georgia*, 428 U.S. 153, 173 (1976); *see also Estelle v. Gamble*, 429 U.S. 97, 102 (1976); *Hixson v. Moran*, 1 F.4th 297, 302 (4th Cir. 2021); *King v. Rubenstein*, 825 F.3d 206, 218 (4th Cir. 2016); *Scinto v. Stansberry*, 841 F.3d 219, 225 (4th Cir. 2016). But, the Eighth Amendment "proscribes more than physically barbarous punishments." *Estelle*, 429 U.S. at 103. It also "embodies" the "'concepts of dignity, civilized standards, humanity, and decency . . . .'" *Id.* (citation omitted).

"Scrutiny under the Eighth Amendment is not limited to those punishments authorized

10

by statute and imposed by a criminal judgment." *DeLonta v. Angelone*, 330 F.3d 630, 633 (4th Cir. 2003) (citing *Wilson v. Seiter*, 501 U.S. 294, 297 (1991)). It "protects inmates from inhumane treatment and conditions while imprisoned." *Williams v. Benjamin*, 77 F.3d 756, 761 (4th Cir. 1996). Moreover, the protection conferred by the Eighth Amendment imposes on prison officials an affirmative "obligation to take reasonable measures to guarantee the safety of . . . inmates." *Whitley v. Albers*, 475 U.S. 312, 319-20 (1986); *see Farmer v. Brennan*, 511 U.S. 825, 832 (1994); *Raynor v. Pugh*, 817 F.3d 123, 127 (4th Cir. 2016); *cf. DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 989 U.S. 189, 199-200 (1989) (stating that "when the State takes a person into its custody and holds him there against his will, the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and general well-being"); *John Doe 4 v. Shenandoah Valley Juvenile Center Comm'n*, 985 F.3d 327, 338 (4th Cir. 2021) (same).

The Fourth Circuit has observed that "not all Eighth Amendment violations are the same: some constitute 'deliberate indifference,' while others constitute 'excessive force.'" *Thompson v. Commonwealth of Va.*, 878 F.3d 89, 97 (4th Cir. 2017) (quoting *Whitley*, 475 U.S. at 319-20). The deliberate indifference standard applies to cases alleging failure to safeguard an inmate's health and safety, including failing to protect inmates from attack, maintaining inhumane conditions of confinement, and failure to render medical assistance. *See Farmer*, 511 U.S. at 834; *Wilson*, 501 U.S. at 303.

An Eighth Amendment deliberate indifference claim is analyzed under a two-pronged test: "(1) the prisoner must be exposed to 'a substantial risk of serious harm,' and (2) the prison official must know of and disregard that substantial risk to the inmate's health or safety." *Thompson*, 878 F.3d at 97–98 (quoting *Farmer*, 511 U.S. at 837–38); *see Younger*, 2023 WL 5438173, at *6; *Heyer v. U.S. Bureau of Prisons*, 849 F.3d 202, 209 (4th Cir. 2017). The Fourth

11

Circuit has characterized this standard as an "exacting" one. *Jackson v. Lightsey*, 775 F.3d 170, 178 (4th Cir. 2014).

As the Fourth Circuit has said, deliberate indifference claims have both an objective and a subjective component. *Younger*, 2023 WL 5438173, at *6; *Moss v. Harwood*, 19 F.4th 614, 624 (4th Cir. 2021). Objectively, a plaintiff "must establish a serious deprivation of his rights in the form of a serious or significant physical or emotional injury" or substantial risk of injury. *Danser v. Stansberry*, 772 F.3d 340, 346-47 (4th Cir. 2014); *see Younger*, 2023 WL 5438173, at *6 (stating that the plaintiff must "first show that he was exposed to an objectively 'substantial risk of serious harm.'") (Citation omitted). The objective inquiry requires the court to "assess whether society considers the risk that the prisoner complains of to be so grave that it violates contemporary standards of decency to expose anyone unwillingly to such a risk." *Helling v. McKinney*, 509 U.S. 25, 36 (1993).

The subjective component requires a showing "that the prison official had a 'sufficiently culpable state of mind,' which . . . consists of 'deliberate indifference to inmate health or safety.'" *Raynor*, 817 F.3d at 127 (quoting *Farmer*, 511 U.S. at 834). In other words, to establish a sufficiently culpable state of mind, there must be evidence that a known excessive risk of harm to the inmate's health or safety was disregarded. *See Wilson*, 501 U.S. at 298-99; *see also Washington v. Housing Authority of the City of Columbia*, 58 F. 4th 170, 179 (4th Cir. 2023) ("To prove deliberate indifference, a plaintiff must show 'that the [defendant] subjectively recognized a substantial risk of harm and that his actions were inappropriate in light of the risk.'" (Quoting *Dean ex rel. Harkness v. McKinney*, 976 F.3d 407, 416 (4th Cir. 2020)). Put another way, the plaintiff must show that the defendant "'subjectively recognized' and ignored this risk." *Younger*, 2023 WL 5438173, at *6 (quoting *Moss*, 19 F.4th at 624).

Reckless disregard occurs when a defendant "knows of and disregards an excessive risk to inmate health or safety; the [defendant] must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists and he must also draw the inference." *Farmer*, 511 U.S. at 837; *see King*, 825 F.3d at 219.  The Fourth Circuit has said: "True subjective recklessness requires knowledge both of the general risk, and also that the conduct is inappropriate in light of that risk." *Rich v. Bruce*, 129 F.3d 336, 340 n.2 (4th Cir. 1997); *see Young v. City of Mount Ranier*, 238 F.3d 567. 575-76 (4th Cir. 2001) ("Deliberate indifference requires a showing that the defendants actually knew of and disregarded a substantial risk of serious injury to the detainee or that they actually knew of and ignored a detainee's serious need for medical care.").

In order to prevail on a claim of failure to protect from violence, a plaintiff must allege, and ultimately establish, that defendants exhibited deliberate or callous indifference to a specific known risk of harm.  *See Pressly v. Hutto*, 816 F.2d 977, 979 (4th Cir. 1987).  "Prison conditions may be 'restrictive and even harsh,' but gratuitously allowing the beating or rape of one prisoner by another serves no legitimate penological objective, any more than it squares with evolving standards of decency.  Being violently assaulted in prison is simply not part of the penalty that criminal offenders pay for their offenses against society." *Farmer*, 511 U.S. at 833-34 (citations omitted).  The same rationale would apply to sexual assault by a correctional officer.

Eighth Amendment liability "'must involve more than ordinary lack of due care for the prisoner's interests or safety . . . .  It is *obduracy and wantonness, not inadvertence or error in good faith*, that characterize the conduct prohibited by the Cruel and Unusual Punishments Clause . . . .'" *Wilson*, 501 U.S. at 299 (quoting *Whitley*, 475 U.S. 312 at 319) (emphasis added in *Wilson*).  What the Court said in *Grayson v. Peed*, 195 F.3d 692, 695-96 (4th Cir. 1999), *cert.*

13

*denied*, 529 U.S. 1067 (2000), is pertinent: "Deliberate indifference is a very high standard—a showing of mere negligence will not meet it . . . . [T]he Constitution is designed to deal with deprivations of rights, not errors in judgments, even though such errors may have unfortunate consequences . . . ."

### C.

In this case, plaintiff claims unwanted sexual activity forced upon him by a female correctional officer. A prisoner has a constitutional right to bodily privacy. *Boxer X v. Harris*, 437 F.3d 1107, 1110 (11th Cir. 2006); *Padgett v. Donald*, 401 F.3d 1273, 1281 (11th Cir. 2005). Indeed, the Fourth Circuit has recognized that individuals have a "special sense of privacy in their genitals," and that "involuntary exposure of them in the presence of people of the other sex may be especially demeaning and humiliating." *Lee v. Downs*, 641 F.2d 1117, 1119 (4th Cir. 1981). And, the Court has said, *id.*: "When not reasonably necessary, that sort of degradation is not to be visited upon those confined in our prisons."

Sexual abuse of an inmate by a corrections officer constitutes a violation of the Eighth Amendment. *Wood v. Beauclair*, 692 F.3d 1041, 1046 (9th Cir. 2012); *see also Schwenk v. Hartford*, 204 F.3d 1187, 1197 (9th Cir. 2000). Indeed, "sexual abuse of a prisoner by a corrections officer has no legitimate penological purpose, and is simply not part of the penalty that criminal offenders pay for their offenses against society." *Boddie v. Schnieder*, 105 F.3d 857, 861 (2nd Cir. 1997) (cleaned up); *see Harris*, 437 F.3d at 1111.

In *Harris*, a male prisoner brought a § 1983 suit alleging, *inter* alia, a violation of his right to privacy and his rights under the Eighth Amendment. He claimed that he was forced to strip and masturbate for the entertainment of a female guard. The Eleventh Circuit concluded that the plaintiff stated a claim for violation of his privacy rights. *Harris*, 437 F.3d at 1110-

1111. Nevertheless, the court rejected the Eighth Amendment claim. *Id.* at 1111. It reasoned, on the facts alleged, that "a female prison guard's solicitation of a male prisoner's manual masturbation, even under the threat of reprisal, does not present more than *de minimis* injury," not cognizable under the Eighth Amendment. *Id.* Therefore, the court affirmed the lower court's dismissal of that claim. *Id.*

Of relevance here, some courts have said that a prisoner cannot consent to a sexual relationship with a prison official. *See*, *e.g.*, *Lobozzo v. Colorado Dep't of Corr.*, 429 Fed. App'x 707, 711 (10th Cir. 2011); *Carrington v. Davis*, 70 F. Supp. 2d 448 (D. Del. 1999); *Cash v. County of Erie*, 04-cv-0182, 2009 WL 3199558, at *2 (W.D.N.Y. Sept. 30, 2009). "The rationale underpinning these decisions rests primarily on the pronounced dichotomy of control between prison guards and prisoners." *Wood*, 692 F.3d at 1047. Because of the "power dynamics," it is "difficult to discern consent from coercion." *Id.* On the other hand, there are cases that have held that consensual sexual relations between a prisoner and a guard do not give rise to an Eighth Amendment claim. *See*, *e.g.*, *Freitas v. Ault*, 109 F.3d 1335, 1338 (8th Cir. 1997).

Dorsey chose not to appear, and a default judgment has been entered against her.[9] Therefore, I accept Carrington's uncontested assertion that his sexual relationship with Dorsey was not consensual.

Nevertheless, the evidence is plain that Carrington did not suffer any physical harm from what transpired. Therefore, I focus on the degradation and humiliation that he experienced. Carrington's psychological injuries are not extensive. For example, Carrington claims that he

---

[9] Because Dorsey declined to appear, she has waived her right to present the affirmative defense of limitations. Accordingly, even assuming that the Court has the authority to reject the claim, *sua sponte*, on the basis of limitations, I decline to do so.

has worried about "STDs." But, the incidents occurred years before he filed suit, and he apparently never got an STD. Nor is there any indication that he ever sought mental health treatment for his anxiety.

Moreover, Carrington claims to suffer because his children remain angry at him for disrespecting their mother. They did not testify, however. Nor were their affidavits offered into evidence. And, it is difficult to credit plaintiff's assertion. It is just as likely that the children, who are not youngsters, are angry with Carrington because his criminal conduct has resulted in his lengthy prison sentence, which has taken him from his family.

In addition, it is clear that plaintiff's suit was quite untimely. Carrington's explanation for his failure to file suit was not persuasive. But, of relevance here, the inordinate delay suggests to the Court that Carrington was not as distraught as he now asks the Court to believe.

That said, involuntary, forced sex is "'offensive to human dignity.'" *Schwenk*, 204 F.3d at 1196 (citation omitted). And, it is not part of the penalty that Carrington should endure for his criminal conduct. Therefore, plaintiff is entitled to an award of some compensatory damages. In my view, an award of $5,000 in compensatory damages is fair and reasonable.

An Order follows.


Date:   September 8, 2023                              /s/
                                           Ellen L. Hollander
                                           United States District Judge